THE ILLINOIS MASONS' BENEVOLENT SOCIETY

*v.*

CHARLES E. R. WINTHROP, Admr. etc.

1. INSURANCE—*whether answers are a warranty.* Where a statement, including questions and answers, in an application for insurance, concluded, "it is hereby declared that the above are true and fair answers to the foregoing questions, in which there are no misrepresentations or suppression of known facts, and I acknowledge and agree that the above statement shall form the basis of the agreement with the society," the answers will not be held to constitute a warranty of their truth, but are mere representations, and if made in good faith, without any intention to deceive, the fact they are not true will not avoid the policy. It is only known facts that are not to be misrepresented.

2. SAME—*statement as to serious illness construed.* A statement in an application for life insurance, that the applicant has had no serious illness, will be construed to mean that the applicant has never been so seriously ill as to permanently impair his constitution, and render the risk unusually hazardous.

3. SAME—*representation as to appearance.* A representation that the applicant had a florid appearance, when, in fact, he was pale and emaciated, will not, of itself, avoid a life policy of insurance; such appearance is no certain indication of disease or feebleness, and would not necessarily cause the insurer to refuse the risk.

APPEAL from the Circuit Court of Perry county; the Hon. AMOS WATTS, Judge, presiding.

Mr. GEO. O. IDE, and Mr. H. M. TRIMBLE, for the appellant.

Mr. GEO. W. WALL, and Mr. E. V. PIERCE, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This action was based upon a breach of a covenant contained in a certificate of membership in the Illinois Masons' Benevolent Society. The certificate is in the nature of a policy of insurance on the life of Edward H. Price, issued in his lifetime. The covenant consists of a promise or agreement by the society, with the assured, to pay to Sarah A. Price, the wife of assured, within thirty days after due notice and satisfactory evidence of the death of assured, for every member of the society belonging to four classes, into which they are divided, certain amounts for each member, the sums being different for each class.

The organization is a kind of mutual benefit association, managed by a directory, and the expenses and losses of the society are paid by assessments made upon the members for such purposes.

Price made an application to become a member and answered interrogatories propounded by the company, contained in a printed form furnished for the purpose. To the question as to complexion, he answered, "florid." To the question, "Are you in good health?" he answered, "Getting well from a slight bilious attack." He also answered, "General appearance healthy." The statement concluded: "It is hereby declared, that the above are true and fair answers to the foregoing questions, in which there is no misrepresentation or suppression of known facts; and I acknowledge and agree that the above statement shall form the basis of the agreement with the society." This application and statement was filled out by Price and signed by him. The form was obtained from Alman, the agent of the company, who was present when it was made, and received and sent it to the company, indorsed "A good healthy brother," and their medical examiner indorsed it, "approved."

The society thereupon issued the certificate sued upon and it was delivered to Price, he having paid the advance fee of $6 for admission. The application was dated on the 24th of

February, 1874. The certificate of membership was dated on the 28th of the same month, and Price died on the 6th of the ensuing April. Proof of death was properly made and furnished, with proper notice, and the society failing and refusing to pay the amount specified in the certificate of membership, this suit was brought to recover the amount.

It appears that Price was taken sick about the 25th of January, 1874, and returned from Chebanse, where he was carrying on a drug store, to Tamaroa on the 28th of the same month. He appeared to be convalescing for some days after his return, but had a relapse, and the physician pronounced it biliousness. He was out a few days and was again attacked, but he was out again in a few days, and the evidence shows he was up and seemed to be recovering when the application was made, and was talking of going back to Chebanse. In a week or ten days after making the application he was again attacked, and from that time till his death he continued to get up and to relapse, at intervals, until his last attack, about two weeks before his death. Whilst he was at Tamaroa he attended to some business, and was, until his last relapse, in bed but a small portion of the daytime, and was talking of and arranging to return to Chebanse.

The answers, of course, enter into the application, because, if for no other reason, assured expressly agreed they should be the basis of the agreement with the society; but the effect that shall be given to the representations is the principal question in dispute between the parties. Appellant claims they were intended to be, and should be, held to constitute a warranty of their truth, and if any or either of them are shown to be untrue, whether their falsity was known, or whether intentionally or unintentionally the truth was concealed, or it was only from the want of memory, or by inadvertence, there can be no recovery.

On the other hand, it is contended that the answers are not warranties, but simply representations; and that, if made in good faith, although some one or more of them may be untrue, if the misstatement was not intentional, but was made in

good faith and under the belief that the statements were true, the misstatement did not operate to avoid the policy.

The clause stating that assured agreed " that the statement shall form the basis of the agreement with the society," is different from the agreements usually contained in life policies. In such instruments it is usually expressly agreed, that the statement is a warranty, and that if any part of it should prove to be untrue, the policy should be void. With persons of ordinary intelligence, the language used in this application would not be so understood. Nor do we suppose that the promoters of this enterprise, when they adopted this form, intended that it should operate as a warranty, such as is usually inserted in life policies. Nor can we suppose for a moment that they would adopt a form of words that would be understood one way by the applicant and would be construed in another by the courts, and thus cheat, wrong or defraud a brother. Such a supposition can not be for a moment entertained. If the language employed was intended to operate as the usual warranty, we apprehend it has not been so understood by those, or any portion of them, who had applied for membership before the death of Price.

If intended as an absolute warranty that the statement and every part of it was true, why limit the previous part of the statement to "no misrepresentation or suppression of known facts?" This the company required of each applicant, and when they made that requirement, they, by implication, absolved him from any injurious consequences from misrepresentation or failure to disclose unknown facts. If a warranty was required of the answers to some of these questions, it would be useless for persons to become members of the society. Each applicant is required to answer the question, whether he is able to earn a livelihood for himself and family. Now, with the great majority of men this is problematical. That power depends upon so large a number of circumstances that a prudent man might well hesitate to answer it in the affirmative. The solution of this question depends, with most men, so decidedly on such a variety of contingencies, that almost any

man, whatever his mental or physical endowments, would be regarded as extremely rash to warrant that he could. If able at the time, what guaranty that he could do so for any definite period? Does this statement require that he should remain so during life, or for a shorter period? and if so, for what period? It is manifest that all that can be required of the applicant is, that he should give to this question an answer based on an honest, fair and intelligent belief.

The applicant is also asked if his ancestors generally reached old age. Now, who are his ancestors, referred to in this interrogatory? How many generations back is it intended to extend? And, suppose the applicant, on slight or unreliable information, answers in the affirmative, do the directors suppose they can show the misinformation and defeat a recovery? If such a construction is to be given to this application, then members, if not wronged, cheated or defrauded, are, we have no doubt, generally deceived unintentionally. Suppose, to the question whether the applicant is, at the time, in good health, the answer is in the affirmative, is every slight obstruction to the performance of their proper functions by the various organs of the system to be held as a breach of warranty, and to avoid the policy? Such, we presume, was never intended to be the construction given to the answer, as all know that but a small percentage of the human family are entirely free from some infirmity, slight or serious.

There is the question whether the applicant has ever had any serious illness or personal injury. Suppose the applicant answers in the negative, may the society show that the applicant, in his early infancy, and so far back that it is beyond memory's reach, had serious illness, and defeat a recovery, although he had never been informed of the fact? That would be a fact that would, in all probability, be wholly unknown to him, and neither party intended that a negative answer should be a warranty that it did not so occur, and a misrepresentation or suppression of such an unknown fact was intended to be included in the exception in the statement. It was only known facts that were not to be misrepresented or suppressed.

Again, what is to be understood by "serious illness?" If any sickness which may terminate in death, then it must embrace almost every distemper in the entire catalogue of diseases. To give such an interpretation to this expression would, we have no doubt, defeat a recovery in a large majority of the certificates issued by the society. The true construction of the language must be, that the applicant has never been so seriously ill as to permanently impair his constitution, and render the risk unusually hazardous. It seems to us, that this is the only reasonable construction that can be given to the language. It is reasonable, and is fair to both parties, and works no hardship or injustice to any one, whether the answers are warranted to be true or only as a fair statement of facts, honestly and truly given as understood by the applicant.

From what has been said, we are unable to hold that the statement was made or intended as a warranty of the absolute truth of the answers, but the statement was only designed to insure honesty and good faith in making them. Otherwise, the statement would not have contained the limitation that they were true and fair answers, " in which there is no misrepresentation or suppression of known facts."

This gives force to the whole of the statement, and repels the presumption that it was understood or intended to be a warranty. And with this language used in the representation, we can only hold that it was intended by the applicant, or expected by the society, the statement should be fair, truthful, and free from all effort to misrepresent or suppress facts, or intention to cheat, wrong or defraud the society. We think, when there is truth, fairness and good faith, that the representations of the application, although from want of information or through inadvertence they may not be strictly true in fact, are all that is required.

It, then, remains to determine whether the verdict is sustained by the evidence, and the jury were properly instructed. It is claimed, that the representations were false in the statements that Price was, in general appearance, healthy, and that he was recovering from a slight bilious attack. It is insisted

that the evidence shows that he was, at the time, pale and emaciated, and that he was not healthy in appearance, and that this misrepresentation misled the society in granting the certificate. Many persons pale in complexion, and of emaciated appearance, are not only healthy but are long lived, nor does their appearance indicate that they are unhealthy. The mere amount of flesh a person may have is no certain indication of the state of his health or the vigor of his constitution. Alman, who received the application, says he was pale at the time, but says nothing of his being reduced in flesh or feeble. Others so speak of his appearance some twenty days or more after he filled up and signed the application. He had then had several relapses, and was evidently in worse health than on the 24th of February.

The record is singularly barren of proof as to his appearance and condition at the date of the application. Alman says he was pale, but he regarded him healthy. Mrs. Price says he appeared to be recovering at and previous to that time, and they so considered him; that he did not relapse for about ten days afterwards; that his appetite was good, and he slept well, and was intending and preparing to return to Chebanse in a few days; that after his attack at that place he was seldom in bed more than a half day at a time, until his final relapse, some two weeks before his death, and it appears he was surprised when informed he could not recover, and Mrs. Price says she had not supposed he was in any danger until told to send for another physician.

From all this testimony, the jury were warranted in finding that he acted in good faith, and honestly believed he was stating nothing but the truth, when he said he was " getting well from a slight bilious attack."

But, it is said, he had practiced as a physician, and should have known that he was not well, but was still laboring under disease. He certainly had all the symptoms of convalescence, and when it is considered that a number of physicians who saw him, and others who heard all the evidence, failed to agree as to the character of the disease of which he died, it

is not strange that he should have been deceived as to its character, or that it would return, when he made his application. Physicians had called his disease biliousness, and all of the doctors say the disease was obscure, and it was difficult to determine its character, even after it had developed so as to produce death. How, then, could he know at that early period?

But, all the evidence considered, we think the jury were warranted in finding that Price acted in good faith, and made no intentional misrepresentations or concealments in the application. If Alman had regarded any of the representations as untrue or doubtful, he would, undoubtedly, have notified the company.

Some stress is laid on the fact, that some eighteen days before he made the application he executed his will, and said he wished to prepare it, as he did not know what might happen, and his business annoyed him when he was sick. The scrivener who drew the will had no recollection of the remark, but if it was made it had no particular significance, as such expressions would be true of nearly all men in the best of health, and with the highest prospects of long life.

A careful examination of the instructions fails to disclose any error in giving, refusing or modifying them, that requires a reversal. We fail to see that a jury of ordinary intelligence could suppose that the court assumed by the instructions, or any of them, any fact as established. The instructions do not bear such an interpretation. We do not see how the jury could understand appellee's second instruction as requiring appellant to establish all of its pleas, to defeat a recovery. The modification of appellant's instructions that were given, only conformed them to the views here expressed, as to whether the representations were or not a warranty.

The instructions fairly presented the law of the case to the jury, and they were not misled by them, and their verdict is justified by the evidence, and the judgment of the court below must be affirmed.

*Judgment affirmed.*