WILLIAM H. MORGAN ET AL.

V.

THE BLOOMINGTON MUTUAL LIFE BENEFIT ASSOCIATION.

| 32 | 79 |
| 53 | 537 |
| 32 | 79 |
| 74 | 489 |
| 32 | 79 |
| 77 | 445 |

*Life Insurance—Membership—Certificate in Benefit Association—Action on—Statements in Application—Representations or Warranties—Question of Law—Evidence.*

1. Where a contract is reduced to writing there is no fact affecting its terms for the jury to find. The law then determines the intent of the parties from the written expression, and so fixes its meaning, which it is the province of the court to declare.

2. In an action on a certificate of membership in a mutual benefit association this court holds, that the answers in the application were, as matter of law, unconditional warranties, and that evidence tending to show their simple untruth, without regard to the knowledge or good faith of the insured or beneficiaries, was admissible.

[Opinion filed November 23, 1889.]

IN ERROR to the Circuit Court of McLean County; the Hon. A. SAMPLE, Judge, presiding.

Messrs. TIPTON & BEAVER, for plaintiffs in error.

The burden of proving answers made by the assured in his application to be untrue, is upon the defendant. N. W. M. L. Co. v. Hazlet, 4 N. E. Rep. 582; Ins. Co. v. Gridley, 100 U. S. 614; P. & A. Life Ins. Co. v. Ewing, 92 U. S. 377; Swik v. Home Ins. Co., 2 Dill. 160; Hancock Ins. Co. v. Daly, 65 Ind. 6; National Association v. Grauman, 7 N. E. Rep. 233.

No statements are to be considered as warranties, except as it is expressly and particularly provided in the contract that they shall be such. Alabama Gold L. I. Co. v. Johnson, 2 So. Rep. 125, and cases cited. Ill. M. Ben. S. v. Winthorp, 85 Ill. 537.

The application is only to be a part of the contract, for so much as it is stipulated and agreed in the application that it shall be; and is referred to in the certificate or policy as the basis of the contract. Am. L. I. Co. v. Day, 39 N. J. Law, 89; Price v. Phœnix Ins. Co., 17 Minn. 504; Wilson v. Conway Ins. Co., 4 R. I. 143; Daniel v. Hudson River Co., 12 Cush. 424; Richmond v. Hart F. I. Co., 47 Wis. 89.

The certificate and the whole contract are to be strictly construed against the company. Aurora Fire Ins. Co. v. Eddy, 55 Ill. 213; Schmidt v. Ins. Co., 41 Ill. 295; Continental L. Ins. Co. Rogers, 119 Ill. 475.

Whether statements made by the assured in his application are warranties, is a question of fact or intention to be found by the jury. American L. Ins. Co. v. Day, 39 N. J. Law, 89; May on Ins., Sec. 159, p. 185, and cases cited in note 1; Schnider v. Farmer's Ins. & Loan Co., 13 Wend. 92.

That statements made by the assured were material to the risk are questions of fact to be decided by the jury. Yates v. Mad. Co. Ins. Co., 2 Comstock, 44, and cases supra.

Mr. F. Y. HAMILTON, for defendant in error.

A warranty is an agreement in the nature of a condition precedent, and like that, must be strictly complied with. May on Ins., Ch. VI, p. 179 ; Daniels v. H. R. Fire Ins. Co., 12 Cush. 416; Campbell v. N. E. Mut. Life Ins. Co., 98 Mass. 381; H. Ins. Co. v. Gray, 91 Ill. 159.

The application was made a part of the contract of insur-
ance and a warranty on the part of the assured.   May on Ins.,
Ch. VI, Secs. 158-9, and cases cited; Continental L. Ins. Co. v.
Rogers, 119 Ill. 474.

Facts alleged to be true in the declaration must be proven.
The declaration avers that statements in application are true
and that no facts relating to health had been suppressed.
This put the burden of proving them to be true on the plaint-
iffs.   This is fundamental and needs no authorities to sup-
port it.

PLEASANTS, P. J.   Plaintiffs in error are the father, mother,
and sister of Charles A. Morgan, and brought this action upon
a certificate of membership, issued to him by the defendant in
error, dated August 27, 1886, declaring his right to partici-
pate in its beneficiary fund to the amount of $4,900, payable
sixty days after his death, to said plaintiffs, respectively, in
the parcels therein specified.

Charles died July 4, 1887.   Two months before that event
the manager of the association wrote to him returning the
amount of his last assessment ($3.75), and stating that for rea-
sons given in a preceding letter it was obliged to declare his
policy void and canceled, and had so marked it on its books;
and the defense set up on the trial, under the general issue
was, that material statements made by deceased in his
application for insurance, and warranted to be true, were
untrue.   The jury returned, with divers special findings, a
general verdict for the defendant, on which the court entered
judgment after overruling a motion for a new trial.

Among the questions and answers in the application were
the following:   "Q.   Has your general health been uniformly
good for the past ten years?   Ans.   Yes.   Q.   Has any physi-
cian ever given any unfavorable opinion of the insurableness
of your life?   Ans.   No.   Q.   Have you personally con-
sulted a physician, been prescribed for or professionally
treated within the past ten years?   Ans.   No."

And among the special interrogatories to the jury on the
part of the plaintiffs and answers thereto were the following:

"Q.   Did Charles A. Morgan know, at the time of the making of the application for insurance, on August 26, 1886, that he had had any trouble with his lungs or that then his lungs were affected? Ans. Yes. Q. Did the assured, Charles A. Morgan, at the time he made his application for insurance answer all material questions truthfully? Ans. No. Q. Was the spitting of blood, as shown by the evidence, a disease, or simply a temporary ailment? Ans. Disease. Q. Was the affliction of Charles A. Morgan spoken of by Dr. Norris throat trouble or lung trouble? Ans. Lung trouble." To special interrogatories, submitted by the defendant, the jury answered that he had disease and hemorrhage of the lungs and spitting of blood in the spring of 1886; that his health had not been uniformly good during the period of ten years next before his application, and that he had been prescribed for and professionally treated within that period.

Dr. Norris, a graduate of Rush Medical College, Chicago, and in active practice for sixteen years, testified that in March, April and May, 1886, he examined, prescribed for and professionally treated the deceased, who was then suffering from disease and hemorrhage of the lungs, and had a cavity in one of them, and that on the occasion of his last visit—about May 14th, he told Wm. H. Morgan, father of deceased and one of the plaintiffs herein, that by reason of such disease Charles would probably not live long, and that he, the doctor, could not, under any circumstances, recommend him for insurance.

The only scientific or professional evidence tending to show he was not then so diseased was the testimony of Dr. Gardiner, also a regular graduate and of thirty years' practice, who examined him at the time of his application and certified the result. He had never before heard of the applicant, nor does it appear that he ever saw him again. He had but little independent recollection of the particulars of the examination. Referring to his certificate, however, he testified that his general appearance was that of a fairly healthy young man; that he didn't find anything the matter with his lungs, and that the chest expansion in respiration shown by the measurement, as certified, would be taken, as a rule, to indicate that they were sound.

The certificate itself, if admissible, would be but a duplicate of his testimony and not an addition to it, and the other doctors, Hallett and Orner, having no personal knowledge of the case, testified only as experts that if Dr. Gardiner was right they would think it highly probable Dr. Norris was mistaken. Of course the converse must be equally true. Of the lay witnesses, some testified that during that spring and summer Charles looked well and did farm work, while others stated that at times he looked ill and weak and had to quit work. Dr. Norris was supported by uncontradicted proof of statements by the deceased and his father that he had hemorrhages which they regarded as being clearly from the lungs and very alarming.

Upon this evidence, which is substantially all that related to his actual condition in respect to health before and at the time of his application, in connection with his answers and statements in regard to it in his application, as above shown, it is manifest that each of the special findings mentioned was fairly supported, and that the jury might also as well have further found, if asked, that a physician had, after examination, given a very decided opinion unfavorable to the insurableness of his life; that if these findings were true his answers to each of the three questions stated were untrue; and that each of those answers contained a statement of fact which was material to the risk, notwithstanding the further finding that on August 26, 1886, when he made his application, he was in good health. Whatever was his apparent condition at that time, or the association may have believed it to be, or the fact really was, it was important to know what it had been or appeared to be so shortly before; nor can it be doubted that if it had known his apparent condition in the spring, or Dr. Norris' opinion of his insurableness, as then expressed to W. H. Morgan, it would have made further inquiry or peremptorily declined to entertain the application.

One of the alleged errors most confidently complained of was the admission of that opinion. Charles was not present when it was said to have been expressed, nor does it appear that he or his mother or sister were ever informed of

it, or that either of the plaintiffs had any agency in procuring the insurance or knew that they were to be the beneficiaries.

It is therefore claimed that this evidence had no tendency to show fraud on their part, and contended that on no other ground could it be competent, especially as against the mother and sister of the deceased. But it is certainly clear that if it was competent to show the simple untruth of the answer that no physician had ever given such an opinion, without regard to the knowledge or belief, or good or bad faith of the respondent, or the innocence of the plaintiffs in the premises, then the admission of this evidence was proper; and whether it was competent to show it would depend upon the question whether that answer was a warranty or only a representation. If a warranty, its untruth was a breach, and any competent evidence of a breach would be competent against anybody claiming under the contract, even though they were, as these plaintiffs were not, purchasers for value.

In the instructions given to the jury the answers to the three questions above quoted were held to be warranties and material to the risk. Appellants insist it was the province of the jury to find as to both these points, because they depended upon a matter of fact, to wit, the intention of the parties. Perhaps it would be more accurate to say, upon their intention as manifested, and we apprehend the rule to be that where this is done by oral declarations or acts *in pais* provable only by evidence in its nature subject to explanation and contradiction, it is for the jury to find it, and it determines the terms of the several stipulations and also their materiality when that is in issue. But where the contract is reduced to writing there is no fact affecting its terms or construction for the jury to find. The law then conclusively determines the intention from the written expression, and so fixes its meaning, which it is therefore the province of the court to declare.

Did the court truly declare its meaning in this case? The contract is evidenced by the certificate of membership set out *in haec verba* in the declaration, which includes whatever else is therein by reference expressly made a part of it; and the application for membership is so referred to. The certificate

states that "in consideration of $10 membership fee having been paid  *  *  *  and in consideration of the warranted representations, covenants and agreements made in his application, No. 7,674, which is hereby made a part hereof and the basis of this membership,  *  *  *  this certificate of membership is issued to Charles A. Morgan," etc.  The application is therein further stated to be "on file in the office of said association and made a part of this certificate, as warranted statements on the faith of which this certificate is issued." Warranted representations or statements are not mere or simple representations, but are warranties.

There also appears in the body of the certificate a stipulation "that in case the statements made in the application are not in all respects true  *  *  *  then this certificate shall be null and void;" and the application concludes with an agreement, signed by the applicant, that the declaration therein "shall be the basis of the contract,  *  *  *  and that if any misrepresentations, or fraudulent or untrue answers have been made  *  *  *  then this agreement shall be null and void, and all moneys which have been paid shall be forfeited to the association."  By the effect thus stipulated to be given to them, the intention of the parties to make these answers unconditional warranties is further and fully manifested.  The statement of them as true is not qualified or limited by any reference to the knowledge, recollection, information or belief of the respondent.  Therefore the honesty of his belief and statement, if shown, would be immaterial; but it is clear that the first and third of these answers—whatever may be thought of the second—related only to matters necessarily within his knowledge, in respect of which a warranty might well be required and given, and hence are not within the reason of the opinions in The Masons' Benevolent Society v. Winthrop, 85 Ill. 537, and the Continental Ins. Co. v. Rogers, 119 Ill. 474.  Their materiality is apparent upon their face, independent of any express agreement that they should be so regarded.  Nor was the legal effect of these warranties at all modified or changed by the negative answer of the respondent to the question in the application whether he

believed himself to be free from all diseases, hereditary or otherwise, tending to shorten life—an answer which, in view of his positive statements concerning his own health and that of his parents, may well be suspected to have been given under a misapprehension of the question—nor by the facts, if they were facts, that he was in good health at the time of his application, and that his death was the immediate effect of a strain or other cause thereafter arising. We are therefore of opinion that the instructions given to the jury on this point were substantially correct.

It is also complained that Mrs. Gilmore was allowed to testify to the fact of hemorrhage on mere hearsay. We think, however, that the fact of hemorrhage was not the subject of the inquiry made of her, and that she did not testify to it at all. It was with reference to the time when she heard of the hemorrhage that she was asked to fix the time of her visit to the applicant's house, when, as she had stated, he was sick.

Perceiving no material error in the record the judgment will be affirmed.

*Judgment affirmed.*