# Bloomington Mutual Life Benefit Association v. Mollie Cummins.

1. INSURANCE—*The Application Made a Part of the Policy—Contracts.* —Where the application is made a part of the policy, the policy with all its terms and conditions constitutes the contract between the parties. The application alone is not the contract.

2. SAME—*Statements in the Application—Warranties.*—The answers in the application may be made warranties by the express terms of the completed contract, and when so made they are to be construed as such.

3. SAME—*Statement of Facts Not Material to the Risk.*—If the answers, however, are simply representations as contradistinguished from warranties, in the technical sense of these terms, then such of the answers not material to the risk, as were honestly made in the belief they were true, would not present an obstacle to a recovery.

4. SAME—*Provisions of the Policy—Must Apply to Representation, Not Warranties.*—The provisions of a policy relating to fraudulent statements, concealment and misrepresentation, to be made effective must be held to apply to representations and not warranties.

5. SAME—*Misrepresentation · Exonerates the Insurer.*—Where the application is by the policy made a part of the contract and a warranty on the part of the assured, a misrepresentation of a material fact, about which a specific inquiry has been made, exonerates the insurer.

6. SAME—*Representations and Warranties.*—A representation, strictly speaking, is said to be no part of the contract of insurance but as induce-

Bloomington Mut. Life Benefit Ass'n v. Cummins.

ment to it, while a warranty enters into and forms a part of the contract itself. The difference in their legal effect on the contract being, that the former is required to be only substantially true, while the latter must be literally so.

7. SAME—*Compliance with Material Representations a Question of Fact; Otherwise with Warranties.*—Whether a material representation has been substantially complied with or is substantially true, is a question of fact for the jury, but it is not so as to a warranty. The warranty must be exactly fulfilled and literally true or the contract is avoided.

8. SAME—*Materiality of the Statements a Question of Law.*—In neither case, however, is it for the jury to say the statement or representation, which is in writing and made a part of the contract of insurance, is immaterial, if it affects the risk, nor that such representation was accidently, honestly or dishonestly made.

9. SAME—*Representations Distinguished from Warranties.*—In regard to representations, as distinguished from warranties, the motive or knowledge of material facts, about which direct inquiry is made, is not issuable, but is issuable as to immaterial facts.

10. SAME—*Statement of Tendencies to Particular Diseases.*—Where a constitutional taint is not determinable from an examination, but is by family history, the knowledge of which the company has a right to assume rests with the insured, then his answers to a direct inquiry in relation to such matters as are material to the risk must be true. If untrue, without regard to actual knowledge or good faith, the policy will be avoided.

**Memorandum.**—Action on an insurance policy. Error to the Circuit Court of Saline County; the Hon. ALONZO K. VICKERS, Judge, presiding. Heard in this court at the February term, 1894. Reversed and remanded. Opinion filed June 23, 1894.

## STATEMENT OF THE CASE.

On December 26, 1888, James E. Stone applied to plaintiff in error for insurance, and signed an application stating his father and mother had died of fever; a brother had died of inflammation of the bowels, two sisters of the same disease, one sister of slow fever, and one brother was living whose health was good. His brother and sister had died between the ages of nineteen and twenty-five. He stated further in the application that he believed himself to be free from all diseases, hereditary or otherwise, tending to shorten life and that his general health had been uniformly good for the past ten years. His family physician was stated to be

Dr. Boyd, of Kentucky, and that he desired the insurance to be made payable on his death to Mollie Cummins, his aunt, a resident of Eldorado, Illinois, to whom he was then paying a visit, his residence being in Kentucky.

The application further stated : " It is expressly agreed and stipulated that the foregoing application shall be the basis of the contract,   *   *   *   and that if any misrepresentations or fraudulent or untrue answers have been made, or any facts which should have been stated have been suppressed   *   *   *   then, and in either event this agreement shall be null and void, and all moneys which have been paid shall be forfeited to the association."

The policy or certificate of membership recited : " In consideration of ten dollars membership fee having been paid, *   *   *   and in consideration of the warranted representations, covenants and agreements made in his application   * *   *   which is hereby made a part hereof, and the basis of this membership,   *   *   *   this certificate of membership is issued to James E. Stone.   *   *   *   the beneficiary fund *   *   *   to the amount of $4,800, which sum, or such part as may be collected   *   *   *   in sixty days after the assessment is made, to be paid to his aunt, Mollie Cummins. *   *   *

" It is also understood, covenanted and agreed   *   *   * that in case the statements made in the application for this certificate on file in the office of said association, and made a part of this certificate as warranted statements, on the faith of which this certificate is issued, are not, in all respects, true, or in case of any fact relating to health, habit or circumstances, being suppressed, then and in either case, this certificate shall be null and void and of no effect."

James E. Stone proposed this insurance to his aunt and told her that she could take out a policy on his life, which she did not do; but he went out and hunted up an insurance agent and had his life insured for her benefit, as the aunt testified, and the certificate in this case is that insurance.   He died in June, 1890, and the association refusing to pay the insurance on account, as alleged, of untrue, false and fraudulent

statements, this suit was brought, resulting on trial in a verdict and judgment for the appellee, from which this appeal is prosecuted.

The evidence shows his three sisters died of consumption, one in 1881, another in 1889. A brother died of consumption in 1887, his father died of same disease in 1885, and his mother of same trouble shortly thereafter, and that the insured also died of consumption. The family physicians testify that this family were afflicted with this disease. It is also proven that the insured lived in the family at the time of the death of his father, mother, brother and sisters. The evidence is conclusive of the cause of death of the members of his family. It is also shown that he stated on several occasions that they had died of consumption and that he expected to go the same way.

BRIEF OF PLAINTIFF IN ERROR, F. Y. HAMILTON, ATTORNEY.

The application was made a part of the contract of insurance and a warranty on the part of the insured. Am. & Eng. Ency. of Law, Vol. 11, pp. 290–1; May on Ins., Chap. VI, Sec. 158–9 and cases cited; Cooke on Life Ins., Sec. 15 and notes, and cases cited; Continental Life Ins. Co. v. Rogers, 119 Ill. 474; Hartford Life Ins. Co. v. Gray, 91 Ill. 159; Lyc. Fire Ins. Co. v. Storrs, 97 Pa. St. 354; N. W. B. & M. A. A. v. Bloom, 21 Ill. App. 159, and cases therein cited; Morgan v. B. M. L. B. Ass'n, 32 Ill. App. 79.

A warranty is an agreement on the part of the assured in the nature of a condition precedent, and like that, must be strictly complied with. May on Ins., Ch. VI, pp. 179–80; Am. & Eng. Ency. of Law, Vol. 11, p. 291, Sec. 3, and notes; Daniels et al. v. H. R. Fire Ins. Co., 12 Cush. 416; Campbell v. N. E. Mut. Life Ins. Co., 98 Mass. 381; H. Life and Annuity Ins. Co. v. Gray, 91 Ill. 159; Mutual B. L. Ins. Co. v. Robertson, 59 Ill. 123; Barteau v. Phœnix Ins. Co., 67 N. Y. 595.

According to the terms of the contract the answers made by the insured in his application were warranties, and if not fully and truly made, the contract was, by its own terms,

void. Cooke on Life Ins., Secs. 17, 18, 19, and notes; Cushman v. U. S. Life Ins. Co., 63 N. Y. 404; Ling v. Mass. Ins. Co., 8 Mo. App. 363; Mayer v. Eq. R. F. Life Ass'n, 49 Hun, 336; Wright v. Eq. L. A. Soc., 50 How. Pr. 367; Buford v. N. Y. Life Ins. Co., 5 Ore. 334; C. M. F. Ins. Co. v. Huntzinger, 98 Pa. St. 41; Archer v. M. L. Ins. Co., 13 Phila. 139; Schultz v. M. L. Ins. Co., 6 Fed. Rep. 672; McCoy v. M. L. Ins. Co., 133 Mass. 82, and cases cited; N. Y. Life Ins. Co. v. Fletcher, 117 U. S. 519.

PARISH & PARISH and BOYER & CHOISSER, attorneys for defendant in error.

MR. PRESIDING JUSTICE SAMPLE DELIVERED THE OPINION OF THE COURT.

This suit, as shown by the foregoing statement of facts, was brought to recover assessable value of a certificate of membership in a Mutual Life Benefit Association. The defense interposed was, that the statements of the insured in the application in reference to matters of fact material to the risk were untrue, false and fraudulent; and that such statements were, under the terms of the contract of insurance, warranties.

The court instructed the jury for the plaintiff, that such statements were in law representations and not warranties, and although untrue in fact, yet unless they were falsely made for the fraudulent purpose of procuring membership in the defendant association, such false statements would not of themselves vitiate the policy issued to the plaintiff in this case. The jury found for the plaintiff the full amount due under the policy or certificate, upon which the court rendered judgment, after overruling motion for new trial, and the giving of the above instruction together with the refusal to give other instructions on behalf of the defendant, holding such statements were in law, under the contract, warranties, are assigned on this record as error.

That many of the answers in the application were material to the risk, is incontrovertible.

That they were made a part of the contract of insurance, "as warranted statements on the faith of which this certificate was issued," is evidenced by the terms of the certificate itself, which is the basis of this action. It is therein further provided that if such statements "are not in all respects true, or in case of any fact relating to health, habits or circumstances being suppressed, then in either case this certificate shall be null and void and of no effect."

The application being made a part of the policy, the policy with all its terms and conditions constitutes the contract between the parties. Rockford Ins. Co. v. Nelson, 65 Ill. 415.

The application alone is not the contract. Mutual Benefit Association v. Conway, 10 Ill. App. 348. It is true, the application in this case is made the basis of the contract, and provides, "If any misrepresentations or fraudulent or untrue answers have been made, or any facts which should have been stated, have been suppressed, then in either event this agreement shall be null and void." The answers in the application are made warranties by the express terms of the completed contract. Herein this case is to be distinguished in this respect from Winthrop's case, 85 Ill. 537, for it is there said the insurance society did not intend that the statements should operate as a warranty. Many peculiar and unusual questions were required to be answered in the application in that case, and as is said, "If a warranty was required of the answers of some of the questions, it would be useless for persons to become members of the society." In that case there is nothing to indicate the policy provided in terms, the answers should be warranties.

In the Rogers case, 119 Ill. 474, the real question was whether it was incumbent on the plaintiff in a suit on an insurance policy to aver and prove the truth of the statements in the application, for the defendant did not attempt to prove they were untrue, and therefore, as the court held, they were not in issue. It is true the court considered to a certain extent the question of what statements were warranties, and said, "It is generally true that where the application is

expressly declared to be a part of the policy, and the state-
ments therein contained are warranted to be true, such
statements will be deemed material whether they are so or
not, and if shown to be false there can be no recovery on
the policy, however innocently made, and notwithstanding
their falsity may have had no agency in causing the loss or
producing the death of the assured." This doctrine seemed
too harsh and therefore the court further say, " If the an-
swers, however, are simply representations, as contradistin-
guished from warranties, in the technical sense of these
terms, then such of the answers not material to the risk,
as were honestly made, in the belief they were true, would
not be binding upon the assured, or present any obstacle to
a recovery." It is further indicated that the provisions of a
policy relating to fraudulent statements, concealment and
misrepresentations, to be made effective, must be held to
apply to representations and not warranties. There is no
provision in this policy as to fraudulent representation
avoiding the same, other than may be said to be contained
in certain language of the application, viz.: " If any mis-
representations, fraudulent or untrue answers have been
made     *     *     *     then this agreement shall be null and
void."

This language indicates that as to certain answers there
may be misrepresentations, as to others they may be fraud-
ulent, and still as to others they may be simply untrue.

It does not follow from the decision in 119 Ill. *supra*,
that all the answers, which by the policy were made war-
ranties, should, notwithstanding, be treated as represen-
tations in order to give effect to the provision in the
application in regard to misrepresentations. The law not
favoring forfeitures, the courts have seized on the term
" representation " in policies of insurance or in applications,
which are made a part of the policy, to construe answers as
not being warranties, which relate to immaterial facts or to
latent diseases of the applicant, of which he was not aware.

To that extent certain answers in this case may be held
to be representations, although by the terms of the policy

made warranties. But as to those matters material to the risk, about which direct inquiry was made, and which by the application and the policy it is provided that if they are " untrue " the policy will be avoided, the answers may be held to be warranties; for it may be well assumed, in view of the language used, it was to such matters the warranty was to apply. The answers in such an application as this were held to be warranties in the case of Morgan v. this association, 32 Ill. App. 79. There is, however, not very much difference in the legal effect of material representations and warranties. A misrepresentation of a material fact, about which a specific inquiry has been made, has been held to exonerate the insurer.

This rule is said to be peculiarly applicable when the application is by the policies made a part of the contract, and a warranty on the part of the assured. Thomas v. Fame Ins. Co., 108 Ill. 91–102.

This is the law whether the answers are representations or are made warranties. Phenix M. L. Ins. Co. v. Raddier, 120 U. S. 183. The policy in the case in hand, as has been stated, makes the answers warranties, at least where material.

A representation, strictly speaking, is said to be no part of the contract of insurance, but as inducement to it : Glendale Woolen Co. v. Protective Ins. Co., 21 Conn. 19; while a warranty enters into and forms a part of the contract itself. Campbell v. N. E. M. L. Ins. Co., 98 Mass. 389. The difference in their legal effect on the contract being, that the former is required to be only substantially true, while the latter must be literally true. Campbell case, *supra.* Whether a material representation has been substantially complied with or is substantially true, is a question of fact for the jury. Miller v. M. B. L. Ins. Co., 31 Iowa, 232. But it is not so as to a warranty.

The warranty must be exactly fulfilled and literally true or the contract is avoided. 21 Conn. 19, *supra.*

In neither case, however, is it for the jury to say the statement or representation, which is in writing and made

a part of the contract of insurance, is immaterial, if it affects the risk. 31 Iowa, 232, *supra*. Nor that such representation was accidentally, honestly or dishonestly made. Armour v. T. Fire Ins. Co., 90 N. Y. 455. The same rule of law applies to the suppression of a material fact in an answer to a direct question, when such answer purports to be complete. 120 U. S. 183, *supra*.

The rule of law is believed to be in regard to representations, as distinguished from warranties, that motive, or knowledge of material facts about which direct inquiry is made, is not issuable, but is as to immaterial facts. Germania Ins. Co. v. Rudwig, 80 Ky. 235; Ala. G. L. Ins. Co. v. Johnson, 80 Ala. 467. There may be some exceptions to this general rule, as in the case of lurking or constitutional tendency to certain diseases of the insured, which may even be manifest to the careful observer, and yet not be consciously recognized by the insured himself. It is natural for a man to desire to disbelieve that his body is afflicted with a constitutional taint, and therefore he does not readily give credence to manifestations that to others are apparent. Therefore, as to such matters, it is insisted in many well considered cases that the honesty and good faith of his answers, even to direct inquiry, is an issuable fact. Mouler v. American Life Ins. Co., 111 U. S. 335. If such tendencies are manifest at the time of the insurance, there seems to be no good reason why the insurance company shoud not protect itself by the physical examination of its medical examiner. If in such case, the examiner reports the insured as a fit subject for insurance, this is some evidence that the insured himself was not at the time aware of the character of his affliction, and the legal effect of his answers should be determined by the test of honesty and good faith.

If, however, such constitutional taint is not determinable from an examination, but is by family history, the knowledge of which the company has a right to assume rests with the insured, then his answers to direct inquiry in relation to such matters as are material to the risk must be true. If untrue, without regard to actual knowledge or good faith, the policy will be avoided.

The disease with which parents, brothers and sisters of the applicant died are clearly material to the risk, as affecting the prospects of life of the applicant. If he assumes to know he must answer the truth. If he does not know he can so state. But when he does answer such direct inquiries in an unequivocable manner, the insurance company has a legal right to rely on them as being true.

In this case the insured was asked:

"If parents are living, give age and condition of health; if dead, state diseases and age at death."

Answer. "Father dead, age 60, cause of death, fever."

"Mother dead, age 45, cause of death, fever."

"Brothers, one dead, age 19, cause of death, inflammation of bowels."

"Sisters, three dead, one, age 25, cause of death, slow fever; one, age 20, cause of death, bowel inflammation; one, age 19, cause of death, inflammation of bowels."

"Do you believe yourself to be free from all diseases, hereditary or otherwise, tending to shorten life?" Answer, "Yes."

"Give the name and address of your family physician." Answer, "Dr. Boyd Hurrican, * * * Ky."

The evidence of the family physician above named, of another family physician, and of the neighbors, show conclusively that the applicant's family above named all died of consumption, at which time he was living in the family and must have known the cause of death, several of them having died within a few years of the time of making the application. It is proven by two witnesses, that he stated his family had died of consumption, and he would go the same way.

The facts in the case of H. L. & A. Ins. Co. v. Gray et al., 91 Ill. 159, are very similar to those in this case. There the applicant stated his father and mother had died of fever, while, in fact, they had died of consumption, more than twenty years before the application. He stated further, that none of his family had been afflicted with such a disease. In that case, the court say: "His answers assume

that he had such knowledge and, therefore, precludes the right of appellees to allege his want of knowledge as an excuse for his answer." The court further say, " It is not reasonable to assume that the assured was ignorant of this fact, of the cause of his parents' death, for he seems to have been living with or near his parents during the time they were afflicted. It is impossible to escape the conviction that the truth, here, was withheld, because its communication would have defeated the application for the policy, or materially increased the premiums for the risk.

The instructions of the court below, and the theory upon which appellee's case rests, that false statements as to matters material to the risk would not vitiate the policy unless made for the fraudulent purpose of procuring the insurance, are erroneous, from either the point of view that the statements were warranties or material representations. The evidence does not warrant a recovery under the law, and therefore the judgment will be reversed and the cause remanded.