## Connecticut Mutual Life Insurance Co. v. Robert J. Young, Adm'r.

1. INSURANCE—*Warranties in the Application, etc.*—Where the application is expressly declared to be a part of the policy and the statements therein contained are warranted to be true, such statements will be deemed material whether they are so or not, and if shown to be false there can be no recovery on the policy.

2. SAME—*Statements in the Applications.*—Statements in an application of insurance will be held to be warranties, when they enter into and are made a part of the contract, and to be representations, in contradistinction from warranties, when they form no part of the contract, but were made only as an inducement to it.

3. SAME—*Misrepresentations in the Applications.*—A misrepresentation or concealment by the applicant for insurance of a fact specifically inquired about by the insurer though not material, will have the same effect in exonerating the insurer from the contract of insurance as if the fact had been material, since, by making such inquiry, the insurer implies that he considers it to be so.

4. SAME—*Application a Part of the Contract.*—Where an application is part of the insurance contract, the assured's answers to the

questions put to him are warranties, and must be truthfully made in order that the contract of insurance bind the company.

**Assumpsit**, on a life insurance policy. Trial in the City Court of Alton; the Hon. ALEXANDER HOPE, Judge, presiding. Verdict and judgment for plaintiff. Appeal by defendant. Heard in this court at the February term, 1898. Reversed. Opinion filed August 31, 1898.

ISHAM, LINCOLN & BEALE and HENRY S. BAKER, attorneys for appellant.

Where, by the terms of the policy, the application is made a part of it, and in said application it is declared and warranted that the answers therein made are true, then all said answers are warranties, and the falsity of any of said answers being shown, the policy becomes void whether said answers were material to the risk or not. American and English Encyclopædia of Law, Vol. 13, p. 663, 1st Ed.; American and English Encyclopædia of Law, Vol. 11, p. 229, 1st Ed.; American and English Encyclopædia of Law, Vol. 11, p. 302, 1st Ed.; Mutual Benefit Life Insurance Company v. Robertson, 59 Ill. 123; Teutonia Life Insurance Company v. Beck, 74 Ill. 165; Fame Insurance Company v. Thomas, 10 Ill. App. 545; Thomas v. Fame Insurance Company, 108 Ill. 91; Mutual Aid Association v. Hall, 118 Ill. 169; Morgan v. Bloomington Mutual Benefit Association, 32 Ill. App. 79.

The question to be determined in this case is not whether the insured at the time of making said application was suffering from any disease, or whether he thought he was affected by any disease, but the issue is whether there was any fraud, untruth, evasion or concealment of the facts in his answers to said application, and if any of said answers were untrue, or false, or concealed the facts, then the appellee can not recover. Morgan v. Bloomington Mutual Life Benefit Association, 32 Ill. App. 79; A. O. U. W. v. Cressey, 47 Ill. App. 616; Bloomington Mutual Life Benefit Association v. Cummins, 53 Ill. App. 530; Metropolitan Life Insurance Company v. Zeigler, 69 Ill. App. 447; Continental Life Insurance Company v. Rogers, 119 Ill. 474.

JOHN F. MCGINNIS, attorney for appellee.

The language of the policy being the language of the insurer, is to be construed, in cases of doubt, most favorably for the insured. Niagara Fire Ins. Co. v. Scammon, 100 Ill. 644; Schroeder v. Trade Ins. Co., 109 Ill. 157; Greenwich Insurance Co. v. Raab, 11 Ill. App. 636.

Mr. Presiding Justice Creighton delivered the opinion of the court.

This was an action in assumpsit in the City Court of Alton, by appellee against appellant, to recover on a policy of insurance which appellant had issued on the life of appellee's intestate.

The declaration consists of a special count on the policy and the common counts. Appellant files special pleas, setting up, in substance, that the policy is based on an application therefor made by appellee's intestate; that the application is a part of the contract of insurance; that in the application intestate made answers to certain questions propounded therein; that in the application intestate declared and warranted all his answers therein to be in all respects fair and true answers to the said questions, and agreed that the application, answers, warranties and agreements therein contained should be a basis of the contract of insurance, a part of the consideration for it, and should be a part of the contract, and that if there should be in any of the answers made, any fraud, untruth, evasion or concealment of the facts, that then the policy should be null and void; and charging that the intestate did not in his application in all respects make fair and true answers to certain of the questions therein, and that in certain of the answers there was fraud, untruth, evasion or concealment of facts, and that thereby the policy became and is null and void.

Trial was by jury. Verdict and judgment in favor of appellee for $1,026.93.

The policy, embracing a copy of the application, was introduced in evidence by appellee, and the original application was introduced by appellant. Among the questions asked and answered in the application are: " What is the

present state of your health? Good. Is there now existing any disease, disorder, infirmity, weakness or malformation? No. For what else have you consulted with or been attended by a physician or surgeon? For no sickness, but drinking ice water last week. Give dates, duration and effect upon health? None. Taphorn [is] the only such [doctor I have had] in my life. Name the residence of such physician or surgeon? Dr. G. Taphorn. Of your usual physician? Dr. G. Taphorn, Alton, Ill. Is there any fact relating to your physical condition, personal, or family history or habits which has not been stated in the answers to the foregoing questions, and with which the company should be made acquainted? No. Have you reviewed the written answers to the above questions, and are you sure that they are full, correct and true? Yes."

The application also contains the following :

" It is hereby declared and warranted that the above are in all respects fair and true answers to the foregoing questions; and it is agreed by the undersigned that this application and the several answers, warranties and agreements herein contained shall be a basis of, a part of the consideration for, and a part of the contract of insurance, * * * and that if there be, in any answer herein made, any fraud, untruth, evasion or concealment of facts, then any policy granted upon this application shall be null and void."

The first clause in the policy is: "The Connecticut Mutual Life Insurance Company of Hartford, Conn., in consideration of the application for this insurance, which is the basis of, and a part of this contract, and a copy whereof is hereto annexed, and of the several answers, warranties and agreements therein contained, and of the annual premium of $22.85, to be paid to them on the 22d day of August, 1896, and on or before the same date in every year during the continuance of this policy, do hereby insure the life of Robert P. Stewart."

The application was made August 17, 1896, the policy issued August 22, 1896, and the insured, after a short illness, died January 10, 1897, of apoplexy.

Appellant contends that the answers made to all the questions in the application are warranties, and that certain of them are false, evasive and conceal facts called for by the questions.

Appellee contends that the answers made to the questions are mere representations and not warranties. The distinction between the effects of warranties and mere representations in a contract for insurance is clearly stated in the Continental Life Insurance Company v. Caroline S. Rogers, 119 Ill. 474. On page 482 the court says: "It is, however, generally true, that where the application is expressly declared to be a part of the policy, and the statements therein contained are warranted to be true, * * * such statements will be deemed material, whether they are so or not, and if shown to be false there can be no recovery on the policy, however innocently made, and notwithstanding their falsity may have no agency in causing the loss or producing the death of the assured." And on page 484: "If the answers, however, are simply representations, as contradistinguished from warranties, in the technical sense of those terms, then such of the answers, not material to the risk, as were honestly made, in the belief that they were true, would not be binding upon the assured, or present any obstacle to a recovery."

Statements in an application of insurance must be held to be warranties when they enter into and are made a part of the contract, and must be held to be representations, in contradistinction from warranties, when they form no part of the contract, but were made only as inducement to it. In Fame Ins. Co. v. Thomas, 10 Ill. App. 545, on page 555, the court says: "Nor is the materiality of a fact about which specific inquiry is made, open to discussion. The rule on this subject is laid down by Mr. Phillips as follows: "A misrepresentation or concealment by one party of a fact specifically inquired about by the other, though not material, will have the same effect in exonerating the latter from the contract, as if the fact had been material, since, by making such inquiry, he implies that he considers it to be

so." In the same connection the author further remarks that this rule is particularly applicable to written answers to written inquiries referred to in the policy. It is so because a party, in making a contract, has a right to the advantage of his own judgment of what is material, and if, by making a specific inquiry, he implies that he considers a fact to be so, the other party is bound by it as such. These rules are especially applicable where, by the terms of the policy, the application is made a part of the contract and a warranty by the assured, and where the assured undertakes, in any form, that his answers are full and correct. In such cases, no question of knowledge, good faith or materiality arise, but it is simply a question of truth and fullness of the answers, and the want of either is fatal."

To the same effect is Morgan v. Bloomington Mut. Life Benefit Ass'n, 32 Ill. App. 79. In Bloomington Mut. Life Benefit Ass'n v. Cummins, 53 Ill. App. 530, it is held, that where the application is made a part of the policy, the policy, with all its terms and conditions, constitutes the contract between the parties, and that the warranties in such case must be literally true or the contract is avoided.

In Metropolitan Life Ins. Co. v. Zeigler, 69 Ill. App. 447, it is said: "The policy was issued upon consideration of the answers and statements contained in the application, all of which were declared to be warranties and made part of the contract, and it was also provided that if any such statements were not true the policy should be void. * * * Where the application is expressly declared to be a part of the policy, and the statements therein are warranted to be true, such statements will be deemed material whether they are so or not, and if shown to be false there can be no recovery on the policy." To the same effect are: Mutual Benefit Life Ins. Co. v. Robertson, 59 Ill. 123; Thomas v. Fame Ins. Co., 108 Ill. 91; Mutual Aid Ass'n v. Hall, 118 Ill. 173, and Connecticut Life Ins. Co. v. Rogers, 119 Ill. 474. This question has been recently under consideration by the Illinois Appellate Court for the First District, in National Union (a benefit insurance association) v. Margareth Arnhorst, a case not yet published in the reports, in which it

is held that where an application is part of the insurance
contract, the assured's answers to the questions put to him
are warranties and must be truthfully made in order that
the contract of insurance bind the company.

In this case the application is clearly a part of the insur-
ance contract; so clearly agreed and stated in the applica-
tion, and so clearly recited in the first clause of the policy,
and a copy of it embraced therein as part of the policy.
There is no qualifying, limiting or superseding clause either
in the application or in the policy, as was the case in Con-
tinental Life Ins. Co. v. Rogers, where the policy contained
the additional statement, that "if this policy has been
obtained by or through any fraud  *  *  *  said policy
shall be  *  *  *  null and void." Which clause, it is
held by the court, relieved the preceding answers from their
character as warranties, and rendered the policy void only
for some fraud in obtaining it or for some answer material
to the risk, not honestly made in the belief that it was true.
The language in this case is not "if this policy has been
obtained by or through any fraud," etc., but "if there be
in any answer herein made, any fraud, untruth, evasion or
concealment of facts, then any policy granted upon this
application shall be null and void." The answers and state-
ments in the application in this case are warranties, and
must be deemed material whether they appear to us to be
so or not, and if any of them be untrue, evasive, or so made
as to conceal any fact fairly called for by the questions,
whether intentional or not, then there can be no recovery
on the policy.

The undisputed testimony shows that the assured, appel-
lee's intestate, did on the 10th of June, 1896, and frequently
thereafter, both prior and subsequent to the obtaining of
the insurance policy sued on, consult Dr. Theodore Milen,
a physician of St. Louis, Missouri, concerning his, assured's,
physical condition, and was continuously professionally
treated by said physician from June 10, 1896, to within five
days of his death. The testimony of Dr. Milen is uncontra-
dicted, its truthfulness unchallenged, and in chief, as
abstracted, is as follows:

" My name is Theodore Milen. I am forty-three years of age, and I reside at 3524 Page boulevard, St. Louis, Mo. I am a physician and have been in general practice since 1889. My office is now located at 1305 Grand avenue, St. Louis, Mo. I was formerly at the corner of Broadway and Market streets, St. Louis. I knew Robert P. Stewart in his lifetime. I knew him in a professional way. He came to my office for consultation and I gave same to him. He first came to see me in that way on June 10, 1896. I gave him prescriptions on that day. I could not say on how many days and dates I gave him prescriptions subsequently. He came down from Alton occasionally, and was here at my office last on the 5th day of January, 1897. Yes, he was at my office during the month of July, 1896, and also during the month of August, 1896, but I could not say exactly on what dates during those months. I know that I gave him prescriptions during the month of August. I can not say positively that he called during the months of September, October, November and December, 1896, but I suppose he did, as he was in several times after the 10th day of June, his first visit. I should say he called to see me at least a dozen times. I gave him a prescription each time. These prescriptions were sedatives; I think the ingredients were about the same each time."

On cross-examination, over appellant's objections, Dr. Milen testified in substance, that intestate's general health was good. " He came to me, as many young men do, believing that he was not strong sexually." The trouble complained of was not a disease; it is nervous healthy men that have the particular trouble he complained of, if it is a trouble at all. That in his opinion intestate had no disease, infirmity, weakness or malformation of the genital or urinary organs; that he gave him the prescriptions because he asked them; that the prescriptions did not have any particular effect on his health; they were principally bromide in five grain doses, and that the condition for which he treated intestate would not increase the risk on his life.

The statements and answers in the application being warranties, the question was not what the evidence now may show the condition of intestate's health to have been when he took out the insurance, nor whether there were facts concealed that we now think might have increased the risk, nor whether the concealment was intentional; but does the evidence now show that there is in the statements and answers of intestate, as they appear in his application, untruth, evasion or concealment of any facts?

The undisputed and uncontested evidence most clearly shows that there is in the statements and answers made by intestate in his application, untruth, evasion and concealment of facts. His answers and statements are such as to induce the belief in the appellant, at the time of issuing the policy, that intestate had never in his life consulted any physician professionally concerning himself, except Dr. Taphorn of Alton, concerning drinking ice water the previous week; and the numerous consultations with Dr. Milen, and Dr. Milen's continuous treatment of intestate for more than two months immediately prior, up to and at the time of making the application, was fairly called for by the questions in the application, and these facts were not disclosed in the statements and answers, but were entirely concealed.

Under the issues and evidence in this case, a breach of the warranties being thus established is an absolute bar to any recovery by appellee on the policy in suit.

The judgment of the trial court is reversed.