## Orvin A. Cessna, Appellee, v. United States Life Endowment Company, Appellant.

1. INSURANCE—*what not material to risk.* A bad cold is so slight an ailment that it is not material to be known by the company either as affecting the risk or to put such company upon inquiry concerning the state of the health of the applicant.

2. INSURANCE—*what constitute warranties.* Where by the application and the terms of the policy the application is made a part of the contract between the parties and where the statements in such application are warranted to be true and there is no provision in such contract which relieved the statements from their character as warranties, they constitute warranties and not representations, and if false would avoid the policy whether innocently or intentionally made.

3. INSTRUCTIONS—*must be predicated upon evidence.* The modification of an instruction authorizing the jury to predicate a verdict upon an immaterial issue, is misleading and erroneous; likewise is such a modification bad if it is not predicated upon evidence.

Assumpsit. Appeal from the Circuit Court of Richland county; the Hon. J. R. CREIGHTON, Judge, presiding. Heard in this court at the October term, 1909. Reversed and remanded. Opinion filed February 11, 1910.

H. G. MORRIS and EDWIN HEDRICK, JR., for appellant; SEARS, MEAGHER & WHITNEY, of counsel.

R. B. WITCHER and S. C. LEWIS, for appellee.

MR. JUSTICE SHIRLEY delivered the opinion of the court.

This is an appeal from a judgment for the sum of

$116 recovered by appellee in the Circuit Court of Richland county.

On the 29th of April, 1908, appellant issued to one Della Pearl Cessna, a policy insuring her life in the sum of $2,000 payable in installments of $40 per month to appellee, who was her husband and beneficiary. The insured died May 25, 1908.

To the declaration alleging the issuing of the policy and her death, appellant filed a plea of the general issue and two special pleas averring that the assured in her written application agreed that the answers, declarations and warranties made therein, and the medical examination and certificate, should be made part of her contract of insurance; that in said application warranted by her to be true, she stated she had never been sick previous to said application, had never been seriously ill and had never had any medical attendant and was then, to wit, on April 15, 1908, in good health. All of which statements were untrue and known by her to be untrue; that she was then seriously ill and being treated for a serious affection of the lungs and had been informed by her physician of her serious condition; that appellant was deceived by such warranties and false statements in her application and was thereby induced to issue the policy.

Replications were filed traversing the material averments in the pleas.

The application was signed by the insured on April 15, 1908, and among the questions asked and answers made by the insured in the application, were the following:

"Seventh: When were you last ill? Never was sick.

Eighth: Have you ever been seriously ill? No.

Ninth: What was the nature of your illness? (No answer).

Tenth: Who was your medical attendant? (No answer).

Eleventh: Are you in good health now? Yes."

The testimony of the agent shows the insured at the

time of making the application when asked the above question "Are you in good health now?" Answered, "Yes," and the agent says "She told me she had a cold."

It was provided in the application that the insured agreed that the answers, declarations and warranties therein made and the medical examination certificate should be made part of the insurance contract, and the application contained also the following: "I hereby warrant the truth of each and all the above answers."

The testimony of the attending physician, Dr. Weber, shows the immediate cause of her death was meningitis, the predisposing cause of which was pneumonia; that there was a pre-existing trouble in the lungs before the pneumonia and it was pronounced by this physician to be tubercular pneumonia. Dr. Weber's first visit was May 12, when he found her very ill and says she had been ill for some time; that she was emaciated, and showed symptoms of having suffered from an exhaustive disease. Dr Weber further testified if she had been suffering some time from tuberculosis of the apex of the lungs and then had contracted a severe cold which resulted in acute pneumonia, all the symptoms he described would naturally follow.

Prior to her treatment by Dr. Weber, she had been treated by Dr. Watkins whose first visit was about April 11th, four days before she signed the application. He testifies he found her suffering from consumption, with the apex of both lungs badly involved and with a temperature of 102 or 103. Dr. Watkins states the disease had been in existence some time.

In addition to the above testimony concerning the condition of her health at the time of and before the application, the certificate of the medical examiner made April 17th, shows no symptoms of consumption or other ailment and his certificate shows she was a proper subject for insurance, and besides he states in

the certificate there was no indication she was not then entirely well.

The statement of the insured to the agent that she "had a cold" did not disclose any condition inconsistent with good health and was entirely consistent with her answer "yes" which she made to the question "Are you in good health now?" A bad cold is so slight an ailment that it was not material to be known by the appellant either as being material to the risk or to put it upon inquiry concerning the state of her health.

By the application and the terms of the policy issued to the insured, the application was made part of the insurance contract between the parties and as the statements in the application were warranted to be true, and as there was no provision in the contract which relieved the statements from their character as warranties they were warranties and not representations, and if false would avoid the policy whether innocently or intentionally made or not.

"It is generally true, that where the application is expressly declared to be a part of the policy, and the statements therein contained are warranted to be true, such statements will be deemed material, whether they are so or not, and if shown to be false, there can be no recovery on the policy, however innocently made, and notwithstanding their falsity may have no agency in causing the loss, or producing the death of the assured." Continental Life Ins. Co. v. Rogers, 119 Ill. 474.

"Where the application for a policy of insurance is expressly declared to be a part of the policy and such statements are warranted to be true they will be held material whether they are or not, and if shown to be false there can be no recovery on the policy." Metropolitan Life Ins. Co. v. Zeigler, 69 Ill. App. 447. The same doctrine is announced in Fame Ins. Co. v. Thomas, 10 Ill. App. 545; Bloomington Mut. Life Benefit Ass'n. v. Cummings, 53 Ill. App. 530.

Error is assigned upon the action of the trial court in modifying appellant's instruction No. 1 and in giving improper instructions on behalf of appellee. The instruction as asked told the jury if the insured had made false statements in her application regarding her health, or falsely stated in her application that she had never been ill or was never sick or falsely stated she had never been seriously ill and that she was then in good health, she could not recover.

The court modified the instruction by inserting "or if she made such false statements to said agent of the company." There was no statement made to the agent other than those written in the application except "she had a cold or a bad cold" which was not material and there was no material evidence upon which to base such modification. And it was misleading and erroneous.

Instruction No. 1 given for appellee was erroneous. It was as we have said immaterial whether she told the agent "she had a cold" nor was there any evidence before the jury that the agent told her it was of no consequence, nor did the statement "she had a cold" cast upon appellant any duty to ascertain the actual facts about her health as indicated in the instruction. Nor were any false answers inserted by the agent which question is submitted to the jury by the instruction, and it was error to give it.

Instruction No. 3 we think should not have limited the condition of her health to the time of signing the application wherein she was asked by the 7th question "When were you last ill" and she answered "Never was sick" and by the 8th question "Have you ever been seriously ill" and she answered "No." These questions and answers were material and were warranties and the instruction eliminated them from the consideration of the jury.

Instruction No. 5, was as follows:

"The jury are instructed that in order that the defendant may avail itself of the defense of fraud set

up in the pleas in this case, the jury must believe from the evidence not only that the statements and representations set forth in said pleas were made, but also that such statements and representations were false and that they were made with intent to deceive and defraud the defendant.''

If the statements being warranties were false, it was sufficient to avoid the policy; no intent to deceive or knowledge of the falsity was necessary and the instruction did not correctly state the law.

Instruction No. 4 was erroneous for like reasons.

After a consideration of all the testimony we are of opinion the verdict was manifestly against the weight of the evidence and the court also erred in denying appellant's motion to set aside the verdict and for a new trial.

For the errors indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*