## Supreme Lodge of the Order of Columbian Knights v. Winifred McLaughlin.

1. INSURANCE—*Unless a Warranty is Performed There is No Contract.*—A warranty in a policy of insurance is a condition or a contingency, and unless it be performed there is no contract.

2. SAME—*Nature of a Warranty.*—A warranty by its very terms precludes inquiry into the materiality of the stipulated fact. In the absence of qualifying clauses, the only question to be decided is as to its truth or falsity. Where it clearly appears by the express terms of the policy, or from the entire contract, that a warranty was intended, the materiality of the fact, matter or circumstance warranted is not a subject of inquiry in aid of the insured, for the latter in such cases will be held strictly to his contract, however immaterial the matter warranted may be.

3. SAME—*Nature of a Representation.*—A representation is not, strictly speaking, a part of the contract of insurance, or of the essence of it, but rather something collateral or preliminary, and in the nature of an inducement to it. It need not be literally true. It is sufficient if it be substantially true. A misrepresentation renders the policy void on the ground of fraud, while non-compliance with a warranty operates as an express breach of the contract.

4. SAME—*Contracts to be Broadly and Liberally Interpreted.*—Contracts of life insurance are broadly and liberally interpreted in favor of the beneficiaries.

**Assumpsit,** upon a policy of life insurance. Appeal from the Superior Court of Cook County; the Hon. ARTHUR H. CHETLAIN, Judge presiding. Heard in this court at the October term, 1902. Reversed. Opinion filed May 7, 1903. Rehearing denied May 22, 1903.

Appellee sued appellant to enforce the payment of an insurance upon the life of her deceased husband, William J. McLaughlin.

Appellant is a fraternal benefit society, incorporated under the laws of this state. To become a member of the order application is made to one of its lodges. The deceased made application for membership in John Crerar Lodge No. 46 of appellant society February 14, 1898. Upon examination by its medical examiner he was found to be suffering from incipient consumption, and was notified of that fact and told that his application would be rejected. Not being satisfied with this result, the deceased asked that

86    APPELLATE COURTS OF ILLINOIS.

VOL. 108.] Sup. Lodge Order of Columbian Knights v. McLaughlin.

he be examined by appellant's medical examiner in chief. The request was granted. This official agreed with the diagnosis of his subordinate, and reported to the lodge that his examination was not favorable, and that the application must not be taken up for another year.

October 17, 1898, the deceased made another application for membership to another lodge of appellant, namely, to Unity Lodge No. 2. The medical report was satisfactory, and November 23, 1898, the certificate sued upon was issued to him. He died March 24, 1899, from pneumonia.

In his written application for such membership in Unity Lodge No. 2, the following, among other things, appears:

" I am temperate in my habits, and have no injury or disease which will tend to shorten my life; am now in good health and am able to gain a livelihood. I do hereby warrant the truthfulness of the statements in this application, and consent and agree that any untrue or fraudulent statement made therein, or to the medical examiner, or any concealment of facts by me in this application    *    *    *    shall forfeit the rights of myself and family or dependents, to all benefits and privileges therein."

The certificate issued by appellant and accepted in writing by the deceased contains the following, among other conditions:

" And upon condition that the statements made by him in his application for membership in said lodge and the statements certified by him to the medical examiner, both of which are filed in the supreme secretary's office, be made a part of this contract, as warranties."

Upon the medical examination under this application the deceased was asked the following questions and in response he gave the following answers:

" 16.    Have you consulted or been advised by any physician within the last five years, if so, whom, when, and for what cause?    Dr. Hoadley, 1898, a cold."

" 24.    A.    Have you ever before applied for membership in this order?    No.    Or any other beneficial society or insurance company?    No."

" B.    Have you ever been rejected?    No."

" 26.    Has any physician given an unfavorable opinion upon your life with reference to life insurance, formally or

informally, with or without your making an application ? If so, state particulars ? No."

" I hereby warrant the truthfulness of all the answers given to the above questions.

(Signed)    WILLIAM J. MCLAUGHLIN."

The evidence of Dr. Edgar D. Smith, the medical examiner for said John Crerar Lodge No. 46, shows that he examined the deceased March 1, 1898, for admission into that lodge, and rejected him because of tuberculosis. In this regard the evidence of the doctor is corroborated by the written examination, signed by the deceased, and introduced into the record as part 2 of Defendant's Exhibit No. 4. The deceased called upon the doctor shortly after. The witness' version of this interview is as follows :

" He was very angry because I had rejected him, and he asked why I had rejected him, and I said, ' Well, McLaughlin, I had to reject you on account of trouble with your lungs.' He said, ' I have been to my physician, Dr. Hoadley, and Dr. Hoadley says'— He thought that Dr. Hoadley considered him free from tuberculosis or consumption; that is, essentially. And I said, 'I am authority in this case, and no one else. If you bring your sputa and I find no bacilli of tuberculosis there I will pass you.' He refused to do it, but later, perhaps a week or ten days, he brought it to my office, and I examined it and made a report to the high medical examiner at the request of the high medical examiner. I made a microscopical examination—a very careful examination—and found immense numbers of bacilli of tuberculosis present in the sputa. It indicated exactly what I said before, tuberculosis of the lungs or consumption. I don't think that I said anything to him at that time regarding his lungs. It was at the second visit in May that I told him he was suffering as I have said. It so chanced that my wife was in the room at the time—in the outer office—and he began to speak as soon as he came into the outer office, he was so indignant."

In cross-examination he says :

" I told him that he had lung trouble, or what is known as incipient tuberculosis or consumption."

Mrs. Smith, the wife of Dr. Smith, corroborates the above interview in every important particular.

Dr. W. M. Harsha, the medical examiner-in-chief of

88       Appellate Courts of Illinois.

Vol. 108.] Sup. Lodge Order of Columbian Knights v. McLaughlin.

appellant, swears that he examined the deceased in March, 1898.

"I found that he had some degree of emaciation, some degree of pallor or paleness, and some rapidity of breathing, some increased action of the pulse. His lungs were diseased. I said to him that he was not acceptable to our Order; that he had disease of the lungs; that we could not accept him. I can't remember the exact language, but that was the conclusion. I made an entry on the paper as to my conclusions and returned the paper to the office of the Supreme Lodge."

William C. Wagner, who was partner of deceased upon a city mail car from February 2, 1898, until his death, testifies that in July, 1898, the deceased told him that he wanted to join the John Crerar Lodge; that " he put up his money and went and got a physician's examination, and the physician refused him admission." That in October, 1898, a man handed witness a little book to give to the deceased.

" When Mr. McLaughlin came in I said, ' Mr. McLaughlin, a man handed me this book and told me to hand it to you.' He took the book and said he had finally got into a lodge, and I said, ' You came out all right?' and he said ' Yes;' and I asked him if he had made a statement in his affidavit whether he had been fired out of the other lodge, and he said ' no,' he did not put that down. I said, ' Suppose they find that out?' And he said they would not find it out. He said, ' What effect would that have?' I said, ' I do not belong to any lodge, Kohler will be here and he will tell you.' A few minutes after Kohler came and he asked him what effect it would have. He asked what effect it would have, making a false affidavit, and Kohler said, ' If the lodge finds that out, that you made a false affidavit or swore to anything false, you could not collect one cent of insurance.' He walked away and said nothing further; that was the end of the conversation. He did not say any more."

Proofs of death were duly made and delivered to appellant. It refused to pay the benefit upon the ground that the deceased had made false and fraudulent answers to questions asked him in the medical examination upon which said contract of insurance was founded. The cause was

tried, resulting in a verdict and judgment in favor of appellee. From that judgment this appeal was perfected.

CHARLES A. WARREN, attorney for appellant.

Lord Mansfield said in the case of DeHahn v. Hartley, 1 Term Rep. 343 : ·

" A warranty in a policy of insurance is a condition or a contingency, and unless it be performed there is no contract."

Any untrue statement in an application for insurance, when made part of the contract, and by the insured warranted to be true, avoids the policy, regardless of the question of its materiality. Clemans v. Sup. Assem. Roy. Soc. Good Fellows, 131 N. Y. 485; Am. & Eng. Ency. of Law (1st Ed.), Vol. II, pp. 288, 289, 292, 293; Joyce on Ins., Sec. 1924, Ib., Sec. 1962; Ib., Sec. 2003; Bacon on Ben. Socs. (2d Ed.), Secs. 198, 208; Thomas v. Fame Ins. Co., 108 Ill. 91.

Where the contract provides that the answers of the insured shall be warranties, that they shall be a part of the contract, and that the falsity of any one of them avoids the contract (all of which are embodied in the contract sued on in this case), a false answer will avoid the contract. Joyce on Ins., Sec. 1964; Ib., Sec. 1970; Ib., Sec. 2003.

Where the contract provides that the answers and warranties made by the insured are material to the risk, the jury can not determine whether they are material or not. Am. & Eng. Ency. of Law (1st Ed.), Vol. II, 297, 298; Conn. Mut. Life Ins. Co. v. Pyle (Ohio), 4 N. E. Rep. 465; May on Ins., Secs. 184, 185; Clemans v. Sup. Assembly, 131 N. Y. 485; Joyce on Ins., Sec. 1962.

It is not within the province of the jury, under the guise of determining whether the statements of the applicant were substantially true or false, to find that diseases and infirmities were not material to be disclosed, when the parties had by the form of the contract of insurance and of the contemporaneous written contract conclusively agreed to consider them material. Bacon on Ben. Socs. (2d Ed.), Secs. 197, 212; Am. & Eng. Ency. of Law (1st Ed.), Vol. II, p. 298n; Parsons on Contracts (6th Ed.), Vol. II, *p. 466;

90    APPELLATE COURTS OF ILLINOIS.

VOL. 108.] Sup. Lodge Order of Columbian Knights v. McLaughlin.

Joyce on Ins., Sec. 1962; Ib., Sec. 1970; Thomas v. Fame Ins. Co., 108 Ill. 91; Ætna Life Ins. Co. v. France, 91 U. S. 510; Foot v. Ætna Life Ins. Co., 61 N. Y. 571; Dwight v. Germania Life Ins. Co. (N. Y.), 8 N. E. R. 654.

There is a well-recognized distinction between representations and warranties in contracts of the character of that involved in this case, representations being mere inducement to the assumption of the risk, while warranties are a part of the contract itself; and their observance are prerequisite conditions to recovery on the contract. Am. & Eng. Ency. of Law (1st Ed.), Vol. II, 292, 297, 298; Bacon on Ben. Socs., Secs. 209, 214, 225; May on Ins. (4th Ed.), Sec. 183; Ib., Sec. 156; Joyce on Ins., Sec. 1882.

A representation differs from a warranty in that to avoid the policy in case of its falsity, it must be of facts material to the risk and must be either willfully false or grossly negligent in character; while the mere falsity of an answer covered by a warranty will avoid the policy. Am. & Eng. Ency. of Law (1st Ed.), Vol. II, pp. 297, 298; May on Ins., Sec. 156.

The effect of a warranty is to make void the policy if the statements made are not literally true, or if the stipulations adopted are not fully observed, without regard to their actual materiality, the willfulness of the falsity or cause of loss. By them the parties have seen fit to settle conclusively the materiality of the matters involved, so that their absolute observance is essential to recovery on the policy. Am. & Eng. Ency. of Law (1st Ed.), Vol. II, pp. 288, 289, 291, 292, 293, 297, 298; Thomas v. Fame Ins. Co., 108 Ill. 91; Conn. Mut. L. Ins. Co. v. Pyle (Ohio), 2 West. 380; Joyce on Ins., Sec. 1970; Bacon on Ben. Socs. (2d Ed.), Sec. 197; Clemans v. Sup. Assem., 131 N. Y. 485.

DARROW, THOMPSON & CROSS, and JACOB C. LEBOSKY, attorneys for appellee.

MR. PRESIDING JUSTICE BALL delivered the opinion of the court.

We find it necessary to consider one phase only of this

case. It is clear that the deceased applied for member-
ship in the month of February, 1898, in one of the
lodges of appellant, was examined by the medical director
of that lodge and also by the chief medical officer of appel-
lant, and was told by each of them that he had incipient
consumption, and that his application was rejected. It
further appears that each of these physicians reported, in
writing, his conclusion to appellant. Six months later the
deceased made a second application to another of appel-
lant's lodges, in which application he made the answers set
forth in the statement of facts. By his answer to question
No. 4 he intended the appellant to understand that the only
consultation he had had with a physician within the five
years then last past was with Dr. Hoadley, and that for
nothing more serious than a cold. This question and his
answer thereto can not be otherwise understood. Thereby
he concealed from appellant his examination by Drs. Smith
and Harsha, and the results that followed. When asked
in question No. 24: A. "Have you ever before applied for
membership in this order?" His answer is "No." "B.
Have you ever been rejected?" Again the answer is "No."
In the light of the undisputed evidence in this case, each of
these answers was false, and false to the knowledge of the
deceased. He is further asked (No. 26): "Has any physi-
cian given an unfavorable opinion upon your life with ref-
erence to life insurance, formally or informally, with or
without your making an application? If so, state particu-
lars." And again the answer is "No." This answer is
clearly false and fraudulent. He closes this written state-
ment with the words, "I hereby warrant the truthfulness
of all the answers given to the above questions," and signs
his name thereto.

By his written and signed application for this insurance,
by the express language of the certificate issued to him,
which he accepts over his own signature, and by the answers
he made to the medical examiner, to which he attached his
name, these statements and answers are made warranties,
upon the truth of which he expressly agrees that all the

92    APPELLATE COURTS OF ILLINOIS.

VOL. 108.] Sup. Lodge Order of Columbian Knights v. McLaughlin.

rights of himself and of his family in and to this insurance shall depend.

In cases of this kind a warranty is a part of the contract, evidenced by the certificate, or by some other paper made a part thereof by appropriate reference, whereby the assured agrees that a certain stated fact is true, and that the validity of his insurance shall depend upon the truthfulness of such fact as stated. May on Ins., Sec. 156 (3d Ed.).

" A warranty in a policy of insurance is a condition or a contingency, and unless it be performed there is no contract." Lord Mansfield in DeHahn v. Hartley, 1 Term Rep. 343.

" An affirmative warranty is where the assured undertakes for the truth of some positive allegation; that is, he stipulates that certain facts are true." Joyce on Ins., Sec. 1946 (Ed. 1897).

A warranty by its very terms precludes inquiry into the materiality of the stipulated fact. In the absence of qualifying clauses, the only question to be decided is as to its truth or falsity. This is the contract made by the parties, from which the court can not depart.

" Where it clearly appears by the express terms of the policy, or from the entire contract, that a warranty was intended, the materiality of the fact, matter or circumstance warranted is not a subject of inquiry in aid of the assured; for the latter in such case will be held strictly to his contract, however immaterial the matter warranted may be." Joyce on Ins., Sec. 1962 (Ed. 1897).

A representation is not, strictly speaking, a part of the contract of insurance, or of the essence of it, but rather something collateral or preliminary, and in the nature of an inducement to it. Bacon on Ben. Soc., Sec. 206.

A representation need not be literally true. It is sufficient if it be substantially true.

" A misrepresentation renders the policy void on the ground of fraud, while non-compliance with a warranty operates as an express breach of the contract." Ala. G. L. Co. v. Johnston, 80 Ala. 467.

These elementary principles are illustrated and enforced in many Illinois cases.

In Thomas v. Fame Ins. Co., 108 Ill. 91, the property insured was called "Clothes-pin and Broom-handle Factory." The applicant answered certain questions "as descriptive of the premises and forming a part of the contract of insurance, and a warranty on his part." One of the questions, with its answer, is as follows: " Q.   What is the precise kind of goods made, and of what material?" " A. Clothespins and broom-handles." A survey accompanied the application. This survey is declared "to be a part and portion of the policy issued thereon, and a warranty " on the part of the assured. The fact was that in one portion of the premises the owners were manufacturing shingles. This fact was not noted in any answer of the applicant, and the portion of the premises used for that purpose was not truly represented by the diagram. The trial court instructed the jury that if they found " that the existence and use of said shingle mill materially affected the risk," then the plaintiff could not recover.   The Supreme Court say:

" The survey and description of the property being thus made an express warranty by the assured, if false, it was wholly unimportant whether they were material to the risk," citing twelve cases in courts of last resort.

Some of the other cases in point in this State are: Hartford Ins. Co. v. Gray, 91 Ill. 159; Continental Ins. Co. v. Rogers, 119 Ill. 474; Nat'l Union v. Arnhorst, 74 Ill. App. 482; Conn. Mut. L. I. Co. v. Young, 77 Ill. App. 440.

Appellee relies upon the case of Globe Ins. Co. v. Wagner, 188 Ill. 133. The ground there urged for a reversal was that in the medical examination one of the questions asked was: "How many brothers dead?" A. "None;" when the fact was that one of the brothers of the insured died in London, England, more than four years prior to the date of the application, although there is no evidence to show that the insured knew of such death. The court say : "In the absence of explicit, unequivocal stipulations requiring such an interpretation, it should not be inferred that the insured or the appellee took a life policy with the distinct understanding that it should be void if any statements

94    APPELLATE COURTS OF ILLINOIS.

VOL. 108.] Sup. Lodge Order of Columbian Knights v. McLaughlin.

made in the medical examination should be false, whether the insured was conscious of the falsity thereof or not." Citing Moulor v. Am. Life Ins. Co., 111 U. S. 335, where the word "true," in a case somewhat similar to the Wagner case, is held to be used as a synonym of "honest, sincere, not fraudulent." Our Supreme Court further say:

" In that case the untrue statements were held to be representations and not warranties, and we think, on the same reasoning, the answer here in question should be so held, and in the absence of proof by the company of fraud or intentional misstatement on the part of the insured, the policy was not rendered invalid merely because the answer proved to be false."

The tendency of life insurance companies to exact rigid and technical conditions and to make it exceedingly difficult, if not impossible, for the applicant to truthfully and strictly answer the numerous questions propounded to him, so that when he has gone his family will have an indefeasible policy of insurance, justifies the courts in a broad and liberal interpretation of these contracts in favor of the beneficiaries. In the Wagner case it will be noted it is not specifically provided, as it is here, that the certificate shall be void in the event of the falsity of any answer; that in that case there is no evidence that the falsity of the answer was known to the insured or to the applicant, while here there is abundant evidence that the deceased not only knew of the falsity of his answers, but declared to one of the witnesses that in his second application " he did not set that down," namely, "that he had been fired out of the other lodge," and that while in the Wagner case the answer may reasonably be considered immaterial, here the answers to his former applications for membership in this order, whether he had ever been rejected, and whether any physician had ever given an unfavorable opinion upon his life, all, each and every of them went to the very foundations of the contract. The words of an opinion are to be read in the light of the facts of the particular case in which they are uttered. After a careful study of the Wagner case we are of the opinion that the Supreme Court will

confine its force to like cases, and will not apply it to such a case as is here shown. For us to interpret it otherwise would be to go against the current of authority in this and in other states and in other final tribunals, and also to deny the teachings of the text writers upon life insurance.

Holding this view of the case, we are compelled to reverse this case without remanding it.