Karel Kotek, Defendant in Error, v. Court of Honor, Plaintiff in Error.

Gen. No. 14,702.

INSURANCE—*when false statements in application constitute defense.* Regardless of whether answers constitute warranties or are merely representations, they constitute a good defense by the company to an action upon a policy or certificate, if such false answers pertain to matters material to the risk.

Assumpsit. Error to the Municipal Court of Chicago; the Hon. WILLIAM N. GEMMILL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Reversed with finding of fact. Opinion filed December 7, 1909.

FRANCIS J. SULLIVAN and WILLIAM B. RISSE, for plaintiff in error.

SIMEON ARMSTRONG, for defendant in error; LOUIS M. KANE, of counsel.

MR. JUSTICE SMITH delivered the opinion of the court.

Defendant in error, Karel Kotek, brought suit in the Municipal Court of Chicago, against plaintiff in error, on a beneficiary certificate issued to Marie Kotek, plaintiff's wife, by the defendant, for $1,000, payable to the plaintiff as beneficiary.

The record shows that on December 10, 1906, Marie Kotek made application in writing for membership and for insurance to the defendant, a fraternal beneficiary society organized under the laws of Illinois. In her application she declared and warranted that she was then of sound body and mind, in good health and free from disease or injury; that the application, including therein the succeeding pages in which she made answers to questions hereafter referred to, and the laws of the society, should form the sole basis of her admission into and continued membership in the society, and of the benefit certificate to be issued to

her; that any untrue or fraudulent statement or answer made to the medical examiner, or any concealment of facts intentional or otherwise, in the application, or in the succeeding pages, should forfeit her right and that of her beneficiary to any and all benefits and privileges therein or arising therefrom.

In the succeeding pages signed by her she says that "the following are full, true and correct answers and statements in relation to the following particulars concerning my Family History." She then stated that her mother was living, in good condition of health, and fifty years of age. She made answers to questions as follows:

"3. Have either of your parents, or any of your paternal or maternal relations had consumption, apoplexy, hemorrhage, scrofula, cancer, insanity, or mental derangement, and if so, state kind, degree, duration, and effect on health? (Answers must be complete and definite.) Ans. No.

4. Have you ever been subject to or had any of the following disorders or diseases? (Answer "yes" or "no" to each.)

Habitual cough? Ans. No.

Pleurisy? Ans. No.

Inflammation of lungs? Ans. No.

Spitting or raising blood? Ans. No.

6. Have you ever lived in the family with or nursed any one who was afflicted with or died of consumption? Ans. No.

8. Do you resemble father or mother? Ans. Mother.

10. Have any facts regarding your past health been omitted? Ans. No.

13. Have you undergone any surgical operation? Ans. No.

14. Have you personally consulted a physician, been prescribed for or professionally treated for sickness or accident in the past five years? Ans. No.

17. Have you had any serious illness, local disease or personal injury? Ans. No.

30. Is there anything to your knowledge in your physical condition, family or personal history or

habits, tending to shorten your life, which is not distinctly set forth above? Ans. No.

37. Have you now, or have you at any time had, any disease of the breast, uterus or ovaries? Ans. No.

38. How many children have you had? Ans. Two.

40. Date of your last confinement? Ans. 1903.

"I hereby adopt as my own the foregoing answers and statements from 1 to 48, inclusive, whether written by me or not, and declare and warrant that they are full, complete and true, and I agree that the truth of each answer and statement mentioned above shall be a condition precedent to any binding contract issued upon the faith of the foregoing answers, and that I have not concealed or omitted to state any facts regarding my health, either past or present.

"I further agree that the foregoing answers and statements, together with the preceding declaration, shall form the basis of the contract between the Court of Honor and myself, and shall constitute warranties, and are offered by me as a consideration for the contract applied for, and are hereby made a part of any benefit certificate that may be issued upon this application, and shall be deemed and taken as part of such certificate; that this application may be referred to in said benefit certificate as the basis thereof, and that they shall be construed together as part of my contract; and I further agree that if any answer or statement in this application is not true and complete, or if I shall fail to comply with and to conform to any or all of the laws of said Court of Honor, now in force or that may hereafter be enacted, amended or adopted, that my benefit certificate shall be void.".

Upon this application the beneficiary certificate sued on was issued to Marie Kotek, dated December 27, 1906. It recites that the application has been accepted by the Society upon the faith of the warranties contained therein and in the medical examination therewith; and in the certificate "it is expressly agreed that the application for membership and medical examination upon which this certificate is issued, the constitution, laws and rules of the Court of Honor

and this certificate shall constitute the complete and only contract between said benefit member and the Society; shall be binding upon the beneficiary or beneficiaries named herein.''

Marie Kotek, the insured, died June 21, 1907, of consumption.

Dr. Christie testified on the trial that he had been a practicing physician for twenty-five years and that he knew Marie Kotek before she was married; that he knew her mother, Mrs. Turek, in her last illness, and that she died in 1902 of pulmonary consumption. He talked to Marie Kotek about her mother. Marie Kotek was living with her mother; she was there all the time of her mother's illness. Dr. Christie further testified that he attended Marie Kotek during her lifetime. She came to his office on May 7, 1905, and two days later he saw her at her home, and treated her for pleurisy with effusion—fluid thrown into the pleural cavity through inflammation in the pleura. It is very often of a tubercular nature. He did not tell her the nature of her disease. He tapped her at that time. From May 7, 1905, to June 10, 1905, he visited her seventeen or eighteen times. Some time in October, 1905, he attended her in confinement. He again attended her in March, 1906, or the early part of April, making five or six visits, possibly more. He saw her again in April, 1907. She then had pulmonary tuberculosis. He treated her once before that time for consumption when she had symptoms of pulmonary tuberculosis. He always examined her closely and carefully. He was the family physician. He signed the proofs of death.

Dr. Christie's evidence was the only evidence given on the trial relating to the truth or falsity of the answers of Marie Kotek to the questions contained in her application for insurance. It is clear from the evidence that her statements in the application were untrue in at least ten important particulars. If these untrue answers were not warranties, they were at

least material representations, and their untruth would avoid the contract. Metropolitan Life Ins. Co. v. Moravec, 214 Ill. 186; Continental Life Ins. Co. v. Rogers, 119 *id.* 474; Conn. M. Life Ins. Co. v. Young, 77 Ill. App. 440. The knowledge or ignorance of the plaintiff in error as to whether there was consumption in the family of the applicant, whether she had ever had pleurisy, or inflammation of the lungs, or whether or not she had ever lived with or nursed one who had consumption, or whether she had undergone any surgical operation, or had any serious illness, or local disease, would have influenced its judgment materially in making or declining to make the contract of insurance. If the statements made as to these matters were false, and upon the evidence they must be so held, it constitutes a good defense under the authorities cited.

The judgment of the Municipal Court is reversed with a finding of fact.

· *Reversed with finding of fact.*